**Dixie Evelyn DICKERSON, Appellant,**

v.

**Carl DEBARBIERIS, individually and d/b/a C & N Property Management; Palm Garden Homeowners Association, Inc.; and Nancy Groves, Appellees.**

No. 14–94–01031–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 15, 1998.

Rehearing Overruled Feb. 12, 1998.

Stephanie McGuire, Houston, for appellant.

Bruce Ian Schimmel, Houston, for appellees.

Before LEE, HUDSON, and EDELMAN, JJ.

## OPINION

EDELMAN, Justice.

Dixie Evelyn Dickerson appeals a judgment in favor of the appellees for unpaid condominium assessments and civil damages. We affirm.

### Background

The Palm Gardens Condominium Declaration, executed in 1977, (the "Declaration") provides that: (1) the Palm Gardens Homeowners Association, Inc. (the "Association") shall have a lien on each condominium unit for any unpaid assessments; (2) the lien is effective upon filing a claim of lien document in the Harris County Clerk's office; and (3) the lien "may be foreclosed in the same manner as foreclosure of a mortgage or deed of trust on real property." However, the Declaration did not name a trustee or set forth any procedures for nonjudicial foreclosure of the lien. An amendment to the Declaration requires the approval of 75% of the record owners of the condominium units.

In March of 1989, the Association amended its bylaws (the "Bylaws") to provide that the Association may foreclose its lien against each condominium unit in like manner as a deed of trust by nonjudicial foreclosure in accordance with section 51.002 of the Texas Property Code. The amendment further authorized the Association to appoint a trustee to foreclose the lien. As contrasted from the Declaration, an amendment of the Bylaws requires the approval of only a majority of the unit owners.

In January of 1990, the Board of Directors (the "Board") of the Association proposed an access gate system to secure condominium parking spaces from trespassers. The system would give each homeowner individual access to his or her parking space through an iron gate controlled by an electronic remote control. In a letter to homeowners dated January 20, the Board stated that the cost of the proposed system would be financed by a special assessment. At a meeting held on February 1, the homeowners discussed the proposal and received written approval forms. In addition, the Board told homeowners that the project would be financed by an increase in their regular monthly assessment for one year rather than by a single special assessment. The access gate system was approved by the requisite number of homeowners in July of 1991, a year and a half after it had been proposed. By that time, the cost of the system had increased, but the increased cost had been discussed during homeowners' meetings in the interim.

Dickerson was one of the homeowners who spoke out against the system at these meetings and did not consent to the installation of a gate on her parking space. From August of 1991 until March of 1992, Dickerson paid her regular monthly assessment, but refused to include the additional amount for the controlled access system. As a result, the Association began charging her a late charge in December of 1991. After March of 1992, the Association refused to accept any more partial payments from Dickerson.

In October of 1991, the Board also passed certain rules regulating parking. In particular, rule 11 prohibited parking more than one four-wheeled passenger vehicle in a designated parking space, and rule 13 prohibited parking a four-wheeled vehicle in a bike storage area. Under these rules, offending vehicles were subject to towing "at owner's expense and without further notice." Prior to the passage of these rules, Dickerson had been parking two cars, one behind the other, in her designated parking space, and she continued to do so after passage of the rules. Concluding that Dickerson was in violation of both parking rules, the Association towed one of Dickerson's cars and then placed a

concrete block in her parking space to prevent her from parking in the portion of the space that the Association contended was a bike storage area.

On March 20, 1992, appellee Carl DeBarbieris, acting on behalf of the Association,[1] filed a document in the Harris County Real Property Records putting Dickerson on notice that: (1) she was in default on maintenance fees to the Association totaling $363.50; (2) such fees were secured by a lien on her unit; and (3) the Association had the right to nonjudicial foreclosure of her unit to collect these fees. On May 12, DeBarbieris sent Dickerson notice of the date and time of the foreclosure sale. On June 2, DeBarbieris, acting for the Association, sold Dickerson's unit to Nancy Groves. The following day, Dickerson filed a petition for temporary restraining order and injunction against the Association, DeBarbieris and Groves.

In her petition, Dickerson claimed that the foreclosure sale was not authorized under the Declaration and the Bylaws. Dickerson also sought to enjoin Groves from taking possession of the property and to recover damages for wrongful foreclosure. After the trial court issued a temporary restraining order, DeBarbieris rescinded the foreclosure sale to Groves.[2] In addition, the Association filed a counterclaim for recovery of the unpaid assessments and for declaratory judgment that the bylaw amendment was properly adopted, that the gate system was properly approved, and that Dickerson may park only one car in her parking area. Dickerson thereafter amended her petition to also seek declaratory judgment on those issues and to enjoin the Association and DeBarbieris from charging her for the gate system and proceeding with foreclosure. Dickerson further sought damages for the alleged wrongful taking of her parking space and alleged violations of federal and state debt collection statutes.

After a bench trial, the trial court entered judgment awarding the Association: (1) $3,243 in unpaid maintenance fees; (2) $323 in late fees; (3) $12,000 in civil damages under section 202.004 of the Texas Property Code, and (4) attorney's fees.

## Standard of Review

■ Findings of fact in a bench trial have the same force and dignity as a jury verdict and are reviewable for legal and factual sufficiency of the evidence by the same standards as applied in reviewing a jury's findings. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). In reviewing for legal sufficiency, we consider only the evidence and inferences supporting the finding. *Minnesota Mining and Mfg. Co. v. Nishika Ltd.,* 953 S.W.2d 733, 738 (Tex.1997). If more than a scintilla of probative evidence supports the finding, the no evidence challenge fails. *Id.* More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). In reviewing for factual sufficiency, we weigh all of the evidence in the record and overturn the finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996).

■ The standard of review for conclusions of law is whether they are correct. *Zieba v. Martin,* 928 S.W.2d 782, 786 n. 3 (Tex.App.—Houston [14th Dist.] 1996, no writ). Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Waggoner v. Morrow,* 932 S.W.2d 627, 631 (Tex.App.—Houston [14th Dist.] 1996, no writ). Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact will support a correct legal theory. *Id.*

## Nonjudicial Foreclosure

In point of error one, Dickerson contends the trial court erred in finding the Association obtained a power of sale over her unit.

---

1. DeBarbieris was the sole proprietor of C & N Property Management, the Association's management company.

2. Despite being listed in the caption of this appeal, Groves was dismissed from the suit when the foreclosure sale was rescinded. She is therefore not a party to this appeal.

As a preliminary matter, we must address whether the trial court actually granted the Association any relief in this regard. Both Dickerson and the Association sought declaratory judgment regarding the validity of the nonjudicial foreclosure sale under the Declaration and Bylaws, even though the foreclosure sale had since been rescinded. Although the judgment recited that "the Court is of the opinion that all relief requested by Dickerson should be denied and all relief requested by the Association and DeBarbieris ... should be granted," the portions of the judgment regarding the Association's declaratory relief were stricken and the final paragraph of the judgment stated "All other relief not expressly granted is denied." Therefore, the judgment does not itself grant any declaratory relief concerning the validity of the nonjudicial foreclosure provisions or sale.

However, various findings of fact and conclusions of law filed by the trial court *can* be read to do so:

### [Findings of Fact]

25. The Declaration grants to the Association a lien which may be foreclosed in the same manner as foreclosure of a mortgage or deed of trust on real property.

### [Conclusions of Law]

2. No amendment of the Declaration was needed in order to clarify the Association's procedure to foreclose the power of sale contained in the Declaration.

7. The Association has the right to nonjudicial foreclosure of its lien, in accordance with its Declaration and Bylaws.

36. The Association is entitled to a Declaratory Judgment that the words "Liens for assessment may be fore-

closed in the same manner as foreclosure of a mortgage or deed of trust on real property" as set forth in the Declaration, means under a power of sale allowing it to appoint a trustee or other agent ... with a power to sell the property in accordance with Tex. Prop.Code Ann .... § 51.002, *et seq.*

Because findings of fact and conclusions of law filed after a judgment are deemed controlling as to any conflict therewith,[3] we will treat the above findings and conclusions as granting declaratory judgment that the foreclosure provisions are valid, and address point of error one accordingly.

Dickerson argues that, before the Association can effect a nonjudicial foreclosure, the Declaration must grant it a power of sale. Although the Declaration states that "[l]iens for assessments may be foreclosed in the same manner as ... a mortgage or deed of trust on real property," Dickerson contends that this provision does not grant a power of sale because it does not use the words "power of sale" or set forth the rights, remedies and procedures for conducting a sale. Dickerson further asserts that the Association could not validly cure this deficiency in the Declaration by adding the new and allegedly conflicting foreclosure provision to its Bylaws.

Although Dickerson challenges whether an amendment to the Bylaws could have the effect of amending the Declaration, she does not contend that the amended Bylaw provision lacked the language necessary to provide a power of sale or allow a nonjudicial foreclosure. Therefore, in order to sustain this point of error, we must agree that Dickerson's initial premise is correct, *i.e.*, that the necessary power of sale language must have been set forth in the Declaration rather than merely in the Bylaws. However, none of the authority that Dickerson has cited or that we have found so provides. Although the condominium statutes in effect since 1963[4] have

**3.** See, e.g., Cole v. Cole, 880 S.W.2d 477, 483 (Tex.App.—Fort Worth 1994, no writ); *Southwest Craft Center v. Heilner,* 670 S.W.2d 651, 655 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.).

**4.** See TEX. PROP.CODE ANN. §§ 81.001–81.210 (Vernon 1995 & Supp.1998) (generally applicable to

condominium regimes created before January 1, 1994); *id.* §§ 82.001–82.164 (generally applicable to condominiums for which declarations were recorded on or after January 1, 1994); TEX.REV.CIV. STAT. ANN. art.1301a (Vernon 1980 & Supp.1986) (repealed 1984).

prescribed what a condominium declaration must contain, none have required it to specify the existence of either a power of sale, a nonjudicial foreclosure remedy, or even the lien itself.[5] Nor have the applicable provisions prohibited the bylaws from addressing such matters.[6] Therefore, because Dickerson has not demonstrated that a power of sale must be set forth in the Declaration rather than the Bylaws, we overrule point of error one.

## Access Gate System Assessment

Dickerson's second point of error argues that the trial court erred in ordering her to pay the additional assessment for the access gate system because the Association did not obtain her consent before constructing the system and charging the increased assessment for its cost.

Paragraph F(2)(c) of the Declaration provides:

> There shall be no alterations nor improvement of common areas and facilities without the prior approval in writing of seventy-five percent (75%) of the owners of all the units, and which does not interfere with the rights of any owners without their consent.

Paragraph J(5)(b) of the Declaration provides:

> Unless all of the first mortgagees ... and all of the Owners ... of the Individual Condominium Units have given their prior written approval, the Association shall not be entitled to:
>
> . . . .
>
> (b) Change the pro rata interest or obligations of any Unit for the purpose of (i) levying assessments or charges....

In addition, a condominium association may not alter a limited common element [7] without the consent of all owners affected and their first lien mortgagees. *See* TEX. PROP.CODE ANN. § 81.104(e) (Vernon 1995).

Based on the foregoing provisions, Dickerson argues that: (1) her assigned parking space was a limited common element; (2) the gate system blocks her access to, and thereby interferes with her use of, her parking space; (3) the gate system was thus an alteration or improvement to Palm Gardens' common and limited common areas; (4) the increased monthly assessment for the gate system changed each unit's pro rata obligation for the assessment; and (5) the Association could not alter a limited common element or charge owners an increased assessment over the originally projected cost of the system without the consent of all owners affected and their first mortgagees.[8]

■ As to the contention that the increased assessment changed the pro rata obligations of the homeowners under paragraph J(5)(b), we interpret the phrase "pro rata ... obligations of any Unit" to mean the respective percentages by which the obli-

---

5. *See* TEX. PROP.CODE ANN. §§ 81.102, 82.055 (Vernon 1995); TEX.REV.CIV. STAT. Ann. art.1301a, § 7(b) (Vernon 1980) (repealed 1984). Although not applicable here, there is now a *statutory* lien, right of nonjudicial foreclosure, and power of sale. *See* TEX. PROP.CODE ANN. § 82.113(c)-(e).

6. *See* TEX. PROP.CODE ANN §§ 81.202, 82.106 (Vernon 1995); TEX.REV.CIV. STAT. Ann. art.1301a, § 13 (Vernon 1980) (repealed 1984). Although not applicable here, section 82.106 states, in addition to what the bylaws must provide, that "[s]ubject to the declaration, the bylaws may provide for other matters the association considers desirable, necessary, or appropriate." *See* TEX. PROP.CODE ANN. § 82.106.

7. A "limited common element" is a portion of the common elements allocated ... for the use of one or more but less than all of the apartments, such as special corridors, stairways, elevators, and similar areas or facilities. *See* TEX. PROP.CODE ANN. § 81.002(7) (Vernon 1995). Similarly, paragraph D(1) of the Declaration provides:

> *LIMITED COMMON AREA.* A portion of the common areas and facilities is hereby set aside and allocated for the limited use of the respective units. Said areas shall be known as "limited common areas and facilities" and shall consist of:
> 1. Parking spaces designated with a unit number corresponding to a unit number as described in the condominium plan....

8. These contentions challenge (a) conclusion of law 11 which states "No rights of any members are being interfered with by the installation or operation of the access system which would require any additional approvals"; and (b) finding of fact 28 that "the requisite number of owners gave written consent to the plan to install the access gate system."

gations are allocated to the units. In this case, although the increased assessments changed the dollar amount of the obligation of each unit, Dickerson has cited no evidence that the increase was assessed other than in accordance with the applicable pro rata percentages of ownership. On the contrary, DeBarbieris testified that the Association did not change the pro rata interest or obligation of Dickerson or any other owner when it increased the assessment. Therefore, we find no basis to sustain the contention that the increased assessment effected a change in pro rata obligations which required the consent of all homeowners.

■ As to the argument that the approval and construction of the gate system altered a limited common element without the consent of all owners in violation of sections 81.104(e) and 81.002(7) of the Texas Property Code, we can find nothing in the record to indicate that any such statutory violation was pled or otherwise raised in the trial court. Therefore, this argument presents nothing for our review. *See* Tex.R.App. P. 52(a).[9]

■ Lastly, as to the assertion that the gate system was an alteration or improvement to a common area that *interfered* with her rights under paragraph F(2)(c), Dickerson acknowledged that the gate system allowed her to control the gate to her parking space by remote control and prevented other people from parking there. DeBarbieris testified that the gate system was proposed to stop transients from vandalizing and stealing cars and that the system made this problem "practically nonexistent" and increased rental values. Even Dickerson admitted that there had been past "incidents" on the property and that she had not heard of any "recent reports" since the installation of the system. Dickerson has not challenged the legal or factual sufficiency of this evidence supporting the trial court's conclusions that the gate system did not "interfere" with ownership rights.[10] Therefore, her second point of error does not demonstrate that the trial court erred in ordering her to pay the increased assessments for the gate system, and it is overruled.

### Debt Collection Statutes

■ Point of error three argues that the Association and DeBarbieris violated federal and state debt collection statutes because "they continually sent Dickerson invoices for an invalid debt because the gate access system was not approved in conformance with Palm Gardens' Declaration" as explained in point of error two. Dickerson further complains that the attempted nonjudicial foreclosure and accompanying documents were a false representation that Palm Gardens and DeBarbieris could seize her property, presumably for the reasons set forth in point of error one.

A point of error is sufficient if it directs the attention of the appellate court to the error about which complaint is made. TEX. R.APP. P. 74(d). Because point of error three does not state the manner in which the *trial court* erred, i.e., what action it erroneously took or failed to take in connection with the alleged violation of the debt collection statutes, point of error three presents nothing for our review.

Moreover, to the extent this point of error asserts violations of the debt collection statutes based on the invalidity of the assessment and nonjudicial foreclosure provisions for the reasons stated in points of error one and two, our overruling of those points negates those grounds as bases upon which to sustain this point of error. Therefore, Dickerson has demonstrated no error by the trial court with regard to the alleged violations of the debt collection statutes, and point of error three is overruled.

9. Because this appeal was perfected before September 1, 1997, it is governed by the Rules of Appellate Procedure in effect before that date.

10. Conclusion of law 11 states that the installation or operation of the access system did not interfere with any of the rights of the homeowners as to require additional approvals. Finding of fact 27 states in part that "the Board ... found ... it [was] necessary and convenient for the Project to be enclosed in an access gate system ... to deter unauthorized nonmembers from roaming the common areas [and] to enhance" sale and rental values.

### Designation of Bike Storage Area

■ In point of error four, Dickerson contends that the trial court erred in denying her injunctive relief because the Association and DeBarbieris wrongfully seized her designated parking space by placing a concrete block there.

In October of 1991, the Board added the following vehicle rules to those already in effect:

11. Designated parking spaces shall be used for parking of only one (1) four-wheeled passenger vehicle.... If more than one four-wheeled vehicle is parked in a single parking space, the one closest to the driveway shall be subject to towing without notice.
....

13. Four wheeled or more vehicles are prohibited from parking in areas designed for bike or motorcycle storage areas. Any vehicle parked in a prohibited area will be towed at owner's expense without further notice.

The Association contends that Dickerson repeatedly violated these rules by parking two cars in her parking space and that the second car protruded beyond the parking space into the common driveway. As a result, the Association towed one of Dickerson's cars and then placed a concrete block in Dickerson's parking space to prevent her from parking two cars there. Dickerson does not question the Board's authority to pass the parking rules, but argues that the Association had no right to designate part of her parking space as a bike storage area because neither the Declaration, Bylaws, condominium Plat, or deed to her unit designate such a bike storage area.

To the extent the Association properly promulgated the rule allowing only one car to be parked in each parking space, as Dickerson has conceded, she has not shown that the concrete block interfered with her ability to park one car in her space in accordance with the rule. Nor has she shown that the block interfered with any other use of the parking

space except that which the rule prohibited, namely, parking a second car there. Thus, regardless how the portion of her space behind the block was "designated," Dickerson has not established that the block interfered with any legitimate use of that space or otherwise operated to "seize" the space. Accordingly, Dickerson has demonstrated no error in the trial court's denial of her injunctive relief, and point of error four is overruled.

### Attorney's Fees

In point of error five, Dickerson contends that the trial court erred in awarding the Association attorney's fees because: (1) Dickerson did not violate the Declaration or Bylaws; (2) the Association did not "assert" an action against Dickerson for purposes of Property Code Section 5.006; (3) the attorney's fee award is excessive; and (4) attorney's fees should have instead been awarded to Dickerson.

■ The decision whether to grant or deny attorney's fees is within the trial court's discretion. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex.1997). Although courts should consider several factors when awarding attorney's fees, a short hand version of those factors is whether the fees are reasonable and necessary for the prosecution of the suit. *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex.1991).

■ The Association sought recovery of attorney's fees, among other grounds, "in accordance with Dickerson's contractual duty to pay attorney's fees in the Declaration...." The trial court's findings of fact found that "[t]here is a written contract authorizing the charging of attorney's fees," and that "Dickerson is contractually obligated to pay the attorney's fees assessed against her by the Association."

Dickerson does not dispute that the Declaration provides for recovery of attorney's fees, that such recovery is contractual in nature,[11] that the Association's general power

---

11. Attorneys fees are recoverable on a contract claim. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1997). The contract need not itself provide for attorneys fees so long as the claim arises out of a contract. *See First City*

to make assessments comes from the Declaration, or that the Association sought recovery of the attorney's fees for collection of the assessments for the access gate system. Although point of error five does not state why Dickerson's nonpayment of the assessment did not violate the Declaration, we presume it is based on her previous contention that the gate system and its assessments were not properly approved. However, because Dickerson failed to show that the gate system and assessment were not properly approved or that her nonpayment of the assessment was otherwise not a violation of the Declaration, she has failed to demonstrate that the Association was not entitled to recovery of contractual attorney's fees, and we need not reach the recoverability of such fees under the Property Code. Similarly, because Dickerson has not prevailed on any of her claims or defenses, she has not shown that the trial court abused its discretion in awarding her no attorney's fees.

■■■ In the alternative, Dickerson seeks a remittitur of the $32,834.75 of attorney's fees awarded for trial on the ground that the amount is excessive in light of the simplicity of the issues and considering that the trial lasted only two days, involved only six witnesses, required taking only one deposition, and litigated only a $3200 claim. Factual sufficiency is the standard for both ordering and reviewing a remittitur. *See Larson v. Cactus Utility Co.*, 730 S.W.2d 640, 641 (Tex. 1987); *Pope v. Moore*, 711 S.W.2d 622, 624 (Tex.1986). That standard also applies to awards of attorneys fees. *See Snoke v. Republic Underwriters Ins. Co.*, 770 S.W.2d 777, 777–78 (Tex.1989). A trial court's findings may be overturned for factual insufficiency only if they are so against the great weight and preponderance of the evidence as

to be clearly wrong and unjust. *Ortiz*, 917 S.W.2d at 772.

In support of the award, the Association's lead attorney testified to the rates charged by each of the attorneys and paralegals. He stated that those rates were reasonable and necessary and that the total fees incurred in the case were $34,893.50. He also offered into evidence a breakdown of each attorney's rate, time, and total fee as well as client invoices from April of 1992 to October of 1993 that included a description of the work done.[12]

Apart from globally disputing the reasonableness of the total amount of attorney's fees, Dickerson has not asserted that the attorneys' billing rates were unreasonable or specified the matters on which legal work was unnecessary or the amount of time spent was unreasonable. Under these circumstances, Dickerson has not demonstrated that the award of attorneys fees was so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Accordingly, point of error five is overruled.

### Property Code Damages

In point of error six, Dickerson contends that the trial court erred in assessing $12,000 in civil damages under section 202.004(c) of the Texas Property Code [13] for the sixty days she violated the Association's rule against parking her car in the area designated for bike storage because: (a) no such damages were pled; (b) neither the Declaration, Bylaws, nor condominium plat refer to any bicycle storage area in her parking space; and (c) the amount of the award is excessive for a parking violation.

---

*Bank–Farmers v. Guex*, 677 S.W.2d 25, 30 (Tex. 1984).

**12.** In addition, the transcript in this case contains nearly 700 pages reflecting amended pleadings, a request for a temporary restraining order, a request for class certification, discovery requests, responses, and supplemental responses, expert witness designations and a request for expert report, a pre-trial conference and order, dismissal notices and motions to retain, a request for sanctions and response, post-trial briefs, mo-

tions for entry of judgment, requests for findings of fact, and a motion for new trial and response.

**13.** Section 202.004(c) of the Property Code provides:

A court may assess civil damages for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the violation. TEX. PROP.CODE ANN. 202.004(c) (Vernon 1995). Dickerson acknowledges that the Association's parking rules fall within the definition of a restrictive covenant for this purpose.

▆ As to the lack of a pleading for such damages, which the Association concedes, the trial court found that before it announced its decision in favor of the Association, Dickerson did not object at trial or in post-trial materials to the evidence introduced on civil damages. It concluded that the issue of civil damages was tried by consent.

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. TEX.R. CIV. P. 67. In this case, DeBarbieris testified that before towing Dickerson's car, Dickerson had been "in violation of the Declaration, Bylaws and rules" for "probably about sixty days." When the Association's attorney then asked DeBarbieris for his opinion on the amount of damages the Association should be awarded under the statute, Dickerson's counsel objected that DeBarbieris was not qualified to interpret the statute. After the trial court sustained that objection, DeBarbieris was asked whether the Association was seeking $200 per day for the sixty days Dickerson violated the restrictive covenants. DeBarbieris answered: "Whatever the specific number of days is, that's what we've asked. I don't know that it's exactly sixty."

Although it is apparent from the record that Dickerson's counsel understood DeBarbieris was testifying about damages under section 202.004(c), and objected to the witness' qualifications to interpret the statute, she did not object to the evidence on "lack of pleading" grounds. Nor did Dickerson object on that ground to the written closing statement in which the Association and De-Barbieris specifically requested damages of $200 per day for sixty days under section 202.004(c) because Dickerson violated the parking rules. Moreover, although Dickerson filed a post trial brief and response to the written closing statement, neither document objected to damages under section 202.004(c) based on a lack of pleadings. Dickerson claims that she objected to the proposed final judgment "because it included the $12,000 award under TEX. PROP CODE ANN. 202.004(c)." However, she cites no portion of the record containing such an objec-

tion, and we have found none. Under these circumstances, Dickerson has not demonstrated that the trial court erred in ruling that this issue was tried by consent.

As to Dickerson's contention that neither the Declaration, By-laws, nor condominium plat refer to any bicycle storage area in her parking space, the judgment awarded these damages for the days in which Dickerson "violated the rule against parking 2 vehicles in the area designed for bicycle parking...." As discussed in point of error four, Dickerson's parking of two vehicles in her parking space was a violation of the Association's vehicle rules, regardless whether a portion of the parking space was designated for bicycle storage. Therefore, the alleged nonexistence and invalidity of any such designation would not rebut or mitigate the violation associated with her parking two cars in the space and thus need not be addressed.

▆ Dickerson next argues that the amount of damages awarded under section 202.004(c) is excessive, bears no relation to the severity of the violation, and amounts to an award of exemplary damages. In determining whether damages are excessive, courts of appeals employ the same test as for any factual insufficiency question. *Pope*, 711 S.W.2d at 624.

In this case, Dickerson offered no evidence that she did not park two cars in her space for sixty days, as claimed by the Association, or even that she was unaware that such conduct was contrary to the Association's vehicle rules. Moreover, section 202.004(c) clearly authorizes a court to assess damages of $200 per day of violation. The statute does not state, and Dickerson does not contend, that the damages assessed must correspond to damages actually suffered by the Association in connection with the violation. The Association contends that, in light of the evidence presented of Dickerson's obstinance in defying the Association's vehicle rules, the trial court could have concluded that the maximum damage amount was warranted by the disruptive effect of Dickerson's actions and the need to effectively deter such actions

in the future.[14] Dickerson has cited no evidence to refute such a conclusion. Under these circumstances, Dickerson has not demonstrated that the section 202.004(c) damage award was so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Accordingly, point of error six is overruled.

## Exclusion of Evidence

In points of error seven and eight, respectively, Dickerson complains that the trial court should have allowed: (a) the testimony of her expert, Michael Treece, about the validity of the nonjudicial foreclosure; and (b) her cross-examination of DeBarbieris about alleged irregularities in the approval process for the access gate system.

The standard of review for admission and exclusion of evidence is abuse of discretion. *See E.I. du Pont de Nemours and Co., Inc. v. Robinson,* 923 S.W.2d 549, 558 (Tex.1995); *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *City of Brownsville,* 897 S.W.2d at 753–54.

■■■ In this case, the trial court refused to allow Treece to testify whether: (1) the Declaration contained language necessary to authorize a nonjudicial foreclosure; (2) *he* would have proceeded with a nonjudicial foreclosure based on the Declaration and Bylaws in this case; and (3) the Bylaws could amend the Declaration to authorize a nonjudicial foreclosure. Dickerson contends Treece should have been allowed to testify about these issues under Texas Rule of Civil Evidence 704 which allows an expert witness to give an opinion on an ultimate issue to be decided by the trier of fact. Although rule 704 allows an expert to state an opinion on a mixed question of law and fact,[15] it does not

permit an expert to state an opinion or conclusion on a pure question of law because such a question is exclusively for the court to decide and is not an ultimate issue to be decided by the trier of fact. *See United Way v. Helping Hands Lifeline Foundation, Inc.,* 949 S.W.2d 707, 713 (Tex.App.—San Antonio 1997, writ requested); *Puente v. A.S.I. Signs,* 821 S.W.2d 400, 402 (Tex.App.—Corpus Christi 1991, writ denied). Here, the excluded questions for Treece focused on his interpreting the legal effect of the Declaration in authorizing the Association to conduct a nonjudicial foreclosure. Such an interpretation was a purely legal question for the trial court. *See Settlers Village Community Improvement Ass'n, Inc. v. Settlers Village 5.6 Ltd.,* 828 S.W.2d 182, 184 (Tex.App.—Houston [14th Dist.] 1992, no writ) (holding that construction of a declaration is a question of law to be determined by the trial court). Thus, the trial court did not abuse its discretion by excluding Treece's testimony on that question, and point of error seven is overruled.

■■■ As for the exclusion of testimony by DeBarbieris, DeBarbieris testified that he sent forms for approval of the gate access system to homeowners whose names were shown on the Association's computer list. Dickerson's attorney then attempted to offer a deed showing that one of the homeowners on that list was no longer the record owner of her condominium unit. The Association's attorney objected that the deed had not been produced in discovery or exchanged pursuant to the joint pretrial order. Dickerson's trial attorney acknowledged that she had gotten the deed from the real property records the day before, and had known about the change of ownership since she "started doing [her] research." Finding no good cause for the admission of the deed,[16] the court sustained the objection. Dickerson's counsel then

---

14. Although not pertaining to the section 202.004(c) damage award, conclusion of law no. 32 states, for example, "Dickerson has acted in an inequitable and unjust manner, by refusing to recognize the associations democratic processes and to pay her just and lawful debts, costing her neighbors a great deal of money to defend and prosecute this case."

15. *See Louder v. De Leon,* 754 S.W.2d 148, 149 (Tex.1988); *Birchfield v. Texarkana Memorial Hosp.,* 747 S.W.2d 361, 365 (Tex.1987).

16. *See* Tex.R. Civ. P. 215(5).

made an offer of proof[17] in which she offered various deed records to point out discrepancies between the identities of the record owners of the units and those who signed the approval forms.

Dickerson's eighth point of error claims that the trial court erred in excluding the cross-examination of DeBarbieris regarding the ownership status of persons who cast votes regarding the gate access system because that testimony revealed that the Association did not verify whether the ballots were cast by the record owners as required by the Declaration. The portion of the statement of facts which Dickerson cites for this proposition is that at which the trial court sustained the Association's objection to admission of the deed record. However, Dickerson does not contend in her brief that the deed records had been produced in discovery, that they had been exchanged pursuant to the pretrial order, or that there was good cause for their admission, such that the trial judge's finding of no good cause was in error.

Moreover, immediately after the objection to the deed record was sustained, Dickerson's attorney asked DeBarbieris whether he had checked the real property records to verify the ownership of the unit to which the deed applied, and DeBarbieris admitted that he had not. This testimony came in without objection. Therefore, Dickerson has not shown that the exclusion of the deed records was in error or that the testimony showing that the Association did not check its list of owners against the deed records was excluded. Because point of error eight thus fails to demonstrate error by the trial court, it is overruled.

### Mental Anguish

In point of error nine, Dickerson contends the trial court erred by not awarding her damages for mental anguish. Because Dickerson did not obtain a finding of liability against the Association on any claim, she was not entitled to an award of damages. *See, e.g., Clutts v. Southern Methodist Univ.*, 626 S.W.2d 334, 337 (Tex.App.—Tyler 1981, writ ref'd n.r.e.). Accordingly, point of error nine

17. *See* Tex.R. Civ. Evid. 103(a)(2), (b).

is overruled and the judgment of the trial court is affirmed.