**Opinion filed January 30, 2009**



**In The**

# Eleventh Court of Appeals

---

**No. 11-07-00264-CV**

---

**MELVIN J. SCOTT AND JOYCE M. SCOTT, Appellants**

**V.**

**CAROL SPALDING AND EARNEST SPALDING, Appellees**

---

**On Appeal from the 259th District Court**

**Jones County, Texas**

**Trial Court Cause No. 20,544**

---

**M E M O R A N D U M   O P I N I O N**

We are called upon to address seven issues on appeal in this contract for deed lawsuit. We reverse and remand that portion of the judgment awarding attorney's fees. Otherwise, we modify the amount of damages and affirm the judgment of the trial court.

Melvin J. Scott and Joyce M. Scott owned a building in Hamlin. They entered into a contract to sell the property to Carol Spalding and Earnest Spalding for $10,000. The purchase price was to be paid at the rate of $250 per month. The Scotts agreed to deliver a warranty deed to the Spaldings when the $10,000 purchase price had been paid.

Before the sale of the property to the Spaldings, Jones County had been renting a space in the building for $300 a month. After the sale of the property to the Spaldings, the Scotts continued

to receive the rent checks from the county but would give the checks to the Spaldings each month. The Spaldings would then write the Scotts a check for the $250 payment called for under the contract. It is largely undisputed that the Spaldings paid the Scotts fifty-one payments of $250 each plus an additional $200 in two other checks, for a total of $12,950 on the $10,000 contract.

At some point in time before the contract price had been paid, the Spaldings had not paid some of the ad valorem taxes due on the property. The Scotts decided to withhold the Jones County rent for six months and use that $1,800 to pay those delinquent taxes.

The Spaldings operated a business in the building that they purchased from the Scotts. The business eventually closed. According to Mrs. Spalding, not long before the business closed, she told Mrs. Scott that she wanted to settle up and "get the papers on [the building]." Mrs. Scott said that she would talk to Mr. Scott and get back to her. Subsequently, and while the Spaldings still had personal property in the building, Mr. Scott went to the Spalding's home. Mrs. Spalding testified that she told Mr. Scott that she wanted to settle up and asked him, "[H]ow much more do we have to pay, or how much have we paid you?" Mr. Scott said that he did not know but that he would get back to her. Mrs. Spalding's testimony was that, at that time, Mr. Scott told her that he had "no intentions of giving [them] a deed to this place." Mr. Scott said that he made no such statement "that [he knew] of."

On a later occasion, Mr. Scott went back to the Spalding's home. Mr. Scott testified that it was at this time that Mrs. Spalding surrendered the keys to the property to him. Mrs. Spalding, however, testified that she did not surrender the keys to him but that she gave Mr. Scott a new key to the back door of the building because the old lock had been replaced after it had been damaged. Mr. Scott already had keys to the rest of the building because he and Mrs. Scott still had some property stored there.

The Spaldings wrote their last check to the Scotts in February 2003. Later, Mr. Scott discovered that the Spaldings had not paid several years of ad valorem taxes on the property, and he paid them. In their briefs, the parties seem to agree that the amount of the taxes paid was $2,562.33.

The Spaldings submitted exhibits showing that they had written checks to the Scotts in the total amount of $12,950. Additionally, as we have noted, the Scotts redirected $1,800 due to the Spaldings and paid it over to taxing authorities. Even though the Spaldings had paid $14,750,

2

$4,750 more than was due on the contract, the Scotts did not deliver a deed to them but, rather, sold the property to a third party.

After the Scotts resold the property, the Spaldings sued them claiming that the Scotts committed various deceptive trade practices, common-law fraud, fraud in a real estate transaction, and breach of contract.

After a bench trial, the trial court awarded the Spaldings actual damages of $14,250. Because the trial court found that the Scotts' actions were committed knowingly, it also awarded the Spaldings additional damages of $8,000. Finally, the court awarded the Spaldings $8,000 in attorney's fees.

Seven issues are brought to us by the Scotts. They are the following: (1) there is either no evidence or insufficient evidence to support the trial court's findings regarding deceptive trade practices; (2) the finding that the Spaldings did not abandon the property is against the great weight and preponderance of the evidence; (3) the Spaldings are not entitled to additional damages because the record does not show that the Scotts acted knowingly; (4) the evidence does not support the finding that the Scotts' actions were the producing cause of the Spaldings' damages; (5) there is a variance between the conclusions of law and the judgment; (6) the trial court should have considered evidence of offsets and credits in favor of the Scotts; and (7) the trial court should not have taken judicial notice of the amount of attorney's fees awarded to the Spaldings.

Because findings of fact in a bench trial have the same force and dignity as a jury verdict, we review them for legal and factual sufficiency of the evidence under the same standards we apply in reviewing a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *Id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *Id.* at 819.

When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of and contrary to the challenged finding. *Cain v.*

*Bain*, 709 S.W.2d 175, 176 (Tex. 1986). After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). As in a legal sufficiency review, the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 615-16 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Pascouet*, 61 S.W.3d at 616.

The Scotts' complaints are directed specifically at Findings of Fact Nos. 7 through 13, 17, and 20 through 22.

In its Finding of Fact No. 7, the trial court found that the Scotts had represented to the Spaldings that they would provide a warranty deed after the principal was paid and that the representation was not true. In Finding of Fact No. 8, the trial court found that the contract had uses or benefits that it did not have. And, in Finding of Fact No. 9, the trial court found that the contract conferred rights and obligations that it did not have.

The contract between the parties provided that, when the sum of $10,000 had been paid to the Scotts, they would issue a deed to the Spaldings. Therefore, the trial court did not err when it found in its seventh finding of fact that the Scotts had represented to the Spaldings that they would furnish a warranty deed to them when the purchase price was paid. The trial court had testimony before it that the Scotts never offered to deliver a deed to the Spaldings, even though more than the contractual purchase price had been paid. The trial court also had testimony before it from both of the Spaldings that Mr. Scott said that he never intended to give them a warranty deed. Mr. Scott's testimony was that he did not say that, "that [he knew] of." Furthermore, the Scotts sold the property to someone else even though the Spaldings had paid more than the entire purchase price. As the only trier of fact, the trial court was free to believe or disbelieve the witnesses. The evidence is both legally and factually sufficient to support the seventh finding of fact that the Scotts represented they would deliver a warranty deed to the Spaldings when the purchase price was paid and that the representation was untrue. Because we have found legal and factual support in the evidence for the

4

trial court's seventh finding, we need not address Findings of Fact Nos. 8 and 9. The Scotts' first issue on appeal is overruled.

We must now decide whether the misrepresentations that the trial court found in its seventh finding were a producing cause of injury to the Spaldings, as the trial court found in its tenth finding of fact. In the Scotts' brief, they give this definition of producing cause: "Producing cause is a substantial factor that brought about the injury and without which the injury would not have occurred." Citing *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995). Under this issue, the Scotts seem to argue that, since the payments that the Spaldings made to the Scotts were paid out of the Jones County rent checks, the Spaldings were not actually out any money. Because the Jones County rent money was the Spaldings' money, the argument is based upon a false premise. *See Graves v. Diehl*, 958 S.W.2d 468, 472 (Tex. App.—Houston [14th Dist.] 1997, no writ). If the Spaldings had been told before they entered the contract for deed that they were not going to get a deed, there can be little doubt that they would have declined to enter this transaction and pay the purchase price, and the injury would not have occurred. The fourth issue on appeal is overruled.

In issue two, the Scotts claim that the trial court's finding that the Spaldings did not abandon the property was against the great weight and preponderance of the evidence. They inform us of the standard of review but cite us to no authority on the issue of abandonment. The complaint is waived. TEX. R. APP. P. 38.1(h). Even if the point were not waived, the trial court heard the contradicting testimony regarding the keys to the property and other testimony regarding abandonment. As the trier of fact, the trial court was the judge of the credibility of the witnesses and the weight to be given to their testimony. The Scotts had the burden of proof on the issue of abandonment. Abandonment is an affirmative defense. TEX. R. CIV. P. 94; *San Jacinto Sand Co. v. Sw. Bell Tel. Co.*, 426 S.W.2d 338, 344 (Tex. Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). The trial court failed to find abandonment. The Scotts' complaint in this issue is framed as a factual sufficiency complaint. When a party attacks the factual sufficiency of an issue upon which it had the burden of proof, it must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Marrs & Smith P'ship v. D.K. Boyd Oil & Gas Co.*, 223 S.W.3d 1, 14 (Tex. App.—El Paso 2005, pet. denied). The evidence that we have outlined above shows that the Scotts have not met this burden. The second issue on appeal is overruled.

In issue three, the Scotts argue that the Spaldings were not entitled to additional damages under TEX. BUS. & COM. CODE ANN. § 17.50(b)(1) (Vernon Supp. 2008). Specifically, the argument is that the record does not support a finding that the Scotts acted knowingly. As in the second issue, except to state the law generally, the argument here is not supported by citations to authority, and we find no record references regarding the evidence. The issue is waived. Rule 38.1(h). Even if the issue is not waived, the Scotts cannot prevail. Again, the trial court had before it testimony that Mr. Scott told the Spaldings on at least one occasion that he never intended to furnish a deed. This testimony, which the trial court as the trier of fact was entitled to believe, together with the undisputed facts that no deed was ever tendered even though the property was paid for and that the property was sold to another after the Spaldings had paid for it, supports the trial court's finding that the Scotts acted knowingly. We overrule issue three.

In their fifth issue on appeal, the Scotts assert that there is a conflict between the ninth conclusion of law and the judgment. In the judgment, the trial court awarded the Spaldings $8,000 in additional damages. In a subsequent conclusion of law, the trial court concluded that the additional damages should be $6,000. When conclusions of law are in conflict with an earlier filed judgment, the conclusions are controlling over the judgment. *Dickerson v. DeBarbieris*, 964 S.W.2d 680, 684 (Tex. App.—Houston [14th Dist.] 1998, no pet.). The Scotts' fifth issue on appeal is sustained, and the trial court's judgment is modified to reflect the additional damages award of $6,000.

In their sixth issue on appeal, the Scotts ask us to hold that the trial court erred when it failed to consider offsets and credits in rendering its judgment. The argument is that the Spaldings paid only $8,387.67 on the purchase price. They reach this conclusion by using, as the starting point of their argument, the $12,750 represented by the fifty-one checks of $250 each as the total amount paid by the Spaldings on the purchase price.[1] Although they do not count the $1,800 rent money from Jones County that they diverted away from the Spaldings as being paid toward the purchase price, the Scotts argue that the trial court should have offset that amount. As the Scotts have constructed their argument, an $1,800 offset would reduce the total amount paid by the Spaldings on the purchase price to $10,950. Next, the Scotts claim that the $2,562.33 they paid for taxes should be

---

[1]We have not been told why the amount of the two checks totaling $200 of additional payments are not included in the judgment.

offset and, thereby, reduce the amount paid by the Spaldings to $8,387.67, an amount less than the $10,000 purchase price. Therefore, the Scotts conclude that the purchase price was never paid and that they were never obligated to deliver a warranty deed to the Spaldings because the purchase price was never paid.

First, the $1,800 belonged to the Spaldings, and an offset would not be proper. Even if we were to agree that the voluntary payment of taxes should be offset, which we do not, the fifty-one checks less the $2,562.33 paid taxes equals $10,187.67, an amount in excess of the purchase price. Furthermore, although the Scotts have cited us to one case regarding the standard of review applicable to this issue, they have presented us no authority to show us why the trial court's failure to offset the amount of the taxes, paid voluntarily by the Scotts after the Spaldings had performed under the contract, was error. We consider the issue to be waived. *See* Rule 38.1(h).[2] The Scotts' sixth issue on appeal is overruled.

In the seventh issue on appeal, the Scotts urge this court to hold that the trial court erred when it awarded attorney's fees to the Spaldings. The Spaldings presented no evidence on the issue of attorney's fees. Instead, they claim that the trial court could take judicial notice that the attorney's fees sought were usual, customary, necessary and reasonable under TEX. CIV. PRAC. & REM. CODE ANN. §§ 38.003-.004 (Vernon 2008). TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon 2008) provides that reasonable attorney's fees may be recovered if the claim is for the following: (1) rendered services; (2) performed labor; (3) furnished material; (4) freight or express overcharges; (5) lost or damaged freight or express; (6) killed or injured stock; (7) a sworn account; or (8) an oral or written contract.

Section 38.003 creates a rebuttable presumption that the usual and customary attorney's fees for a claim of the type described in Section 38.001 are reasonable. Section 38.004 allows the court to take judicial notice of the usual and customary attorney's fees. At least two courts have held that these provisions are not limited to those claims set out in Section 38.001. *See, e.g., Main Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604, 622 (Tex. App.—Fort Worth 2006, pet. denied); *Lefton v. Griffith*, 136 S.W.3d 271 (Tex. App.—San Antonio 2004, no pet.); *Copeland v. Alsobrook*, 3 S.W.3d 598 (Tex. App.—San Antonio 1999, pet. denied). However, we agree with those courts

---

[2]We note that, although the Scotts sought an offset and credit, they made no counterclaim for the taxes they had voluntarily paid after the Spaldings had paid for the property.

that hold that, unless the claim is one set forth in Section 38.001, the court may not take judicial notice that the usual and customary fees are reasonable but, rather, the party must offer legally and factually sufficient evidence on the issue. *See, e.g.*, *Charette v. Fitzgerald*, 213 S.W.3d 505, 514-15 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Hasty Inc. v. Inwood Buckhorn Joint Venture*, 908 S.W.2d 494, 502 (Tex. App.—Dallas 1995, writ denied); *Leggett v. Brinson*, 817 S.W.2d 154, 159 (Tex. App.—El Paso 1991, no writ). Because the trial court's judgment is based upon violations of the DTPA, this case is not a claim that is described in Section 38.001. The trial court abused its discretion when it awarded attorney's fees based only on judicial notice under Sections 38.003 and 38.004. The Scotts' seventh issue on appeal is sustained.

Normally, when we find that there is no evidence to support a finding, the remedy is to reverse and render on the point. However, the award of attorney's fees under the DTPA presents a unique situation. This is so because an award of attorney's fees is mandated. TEX. BUS. & COM. CODE ANN. § 17.50(d) (Vernon Supp. 2008). The trial court *shall* award reasonable and necessary attorney's fees. *Id.* Therefore, here, the proper action is to remand the issue of attorney's fees to the trial court for a determination of the reasonable and necessary attorney's fees to be awarded. *See Leggett*, 817 S.W.2d at 159. The seventh issue on appeal is sustained, and the cause is remanded to the trial court for a determination of attorney's fees in accordance with this opinion.

The judgment of the trial court is reversed with respect to its award of attorney's fees and remanded to the trial court for a proper assessment of those fees. We modify the award of additional damages by reducing the award to $6,000. Otherwise, the judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


January 30, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

8