# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00610-CV

---

**Gabriela Castro, Appellant**

**v.**

**Jessie Contreras, Appellee**

---

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-20-001612, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Gabriela Castro challenges the trial court's order denying her adoption of a child. In two issues, she asserts that the trial court abused its discretion (1) by failing to hold a final hearing on her petition to adopt and a hearing on whether appellee Jessie Contreras revoked his consent to the adoption without good cause and (2) because no final hearing was held, by relying on legally and factually insufficient evidence to support a key finding of fact and a key conclusion of law. For the reasons explained below, we affirm the trial court's order.

## BACKGROUND

Both Castro and Contreras sought to adopt a child, H.M., who is not related by birth to either of them. H.M. was born in 2014. Evidence admitted by the trial court shows that H.M. was later taken into the custody of the Texas Department of Family and Protective Services; her parents' rights were subsequently terminated. Evidence in the record reflects that the Department

initially placed H.M. with Castro and Contreras in February 2017, and the Department was appointed her permanent managing conservator in November 2017.

Castro and Contreras were in a dating relationship when H.M. came into their home. In May 2018, in another case involving H.M., the Department reported to the trial court that "[t]he Contreras[e]s have expressed a desire to adopt [H.M.] and provide her with a safe, stable and permanent home" and that they were working with an agency to become licensed. The relationship between Castro and Contreras deteriorated, however, and they separated in July 2018. After their separation, H.M. lived primarily with Castro, but Contreras had what was similar to a standard possession order governing his access to H.M., seeing her every week for a couple of hours on Wednesday evening and every other weekend from Friday to Monday.

On March 6, 2020, Castro filed her petition to adopt, alleging that her adoption of H.M. would be in H.M.'s best interest, H.M. was eligible for adoption, Castro was the primary caregiver of the child, and Castro had substantial past contact with the child. In different cause numbers, Contreras filed his petition to adopt and a petition to modify the order that appointed the Department as managing conservator.

**The trial court conducts a trial on Castro's and Contreras's adoption petitions.**

On November 9, 2020, the trial court called for trial both Castro's and Contreras's adoption petitions and Contreras's petition to modify. The reporter's record reflects that the trial court heard a "trial on the merits" on November 9, 10, 12, and 16, 2020, and January 20, 2021. During these proceedings, twenty-two witnesses appeared, including the parties' friends and family and Department professionals who had been involved with H.M.'s case. The reporter's

2

record further reflects that post-trial proceedings were conducted on February 6, 2021, and June 4, 2021.

At the trial that began in November 2020, the parties agreed that Contreras would put his witnesses on first because he had the burden of proof to show that the Department was withholding its consent to his adoption of H.M. without good cause. The Department's caseworker for the child for four years testified that because Castro and Contreras were not married when H.M. was initially placed with them, the Department's initial plan had been for both of them to adopt through a "second-parent" adoption proceeding. In this type of proceeding, the Department would consent to one foster parent's adoption of the child, and then that adoptive parent would consent to the other foster parent's adoption of the child. At the outset of the proceedings, the Department took the position that it did not consent to Contreras's adoption of H.M., and that while it acknowledged Contreras's bond with H.M. and wanted him to continue to have contact with her, it did not want him to have legal rights to her and wanted it to be up to Castro whether H.M. had contact with him. Contreras's position was that he and Castro should jointly adopt H.M. Castro's position was that her petition for adoption should be granted and that Contreras's petition for adoption and request for modification should be denied.

Throughout these proceedings, Castro testified that she did not want to jointly adopt H.M. with Contreras, co-parent with him, or share conservatorship with him. When the trial court asked her if she would be willing to adopt with Contreras, Castro said, "No, I would not adopt with him." The court then asked, "Okay. So what you're telling me is either you adopt alone or he adopts alone, but you won't do it together," to which Castro replied, "Correct." Near the conclusion of testimony on November 12, the Department's caseworker testified about why the Department was willing to consent to Castro's adoption of the child but not Contreras's. She

3

explained that it was withholding consent to Contreras's adoption of H.M. because the Department could only consent to one parent adopting and because "other professionals, not the Department" had determined that Castro had "the primary attachment" and "most powerful" relationship with H.M., even though Contreras also had "a relationship and bond" with H.M.

After the close of the evidence portion of the trial on November 16, having heard evidence of the animosity between Castro and Contreras and its effect on H.M., as well as evidence about the parties' bonds to the child from H.M.'s therapist, whom the trial court found "less than credible" and "wholly unprofessional," the trial court stated on the record its finding that "the Department did not have good cause to deny the adoption of Mr. Contreras." The court further stated that instead of solely approving Contreras's adoption of H.M. at that time, the court intended to order Castro and Contreras to engage in a number of activities to see whether they could make progress on their abilities to cooperatively parent in an effort to keep H.M. from losing a third family. For the time being, the trial court left the Department as managing conservator and H.M. primarily placed with Castro but changed Contreras's possession schedule from a standard possession schedule to an expanded standard possession schedule, including holidays. The trial court expressed its intent to appoint a therapist or co-parenting facilitator to perform a hybrid role of co-parenting facilitator and custody evaluator and to have frequent hearings to assess the parties' progress toward being able to cooperatively parent H.M.

**The trial court allows Castro to present additional evidence after the initial close of evidence.**

On January 20, 2021, the trial court gave Castro the opportunity to present three additional witnesses and to take additional testimony from H.M.'s current Department caseworker and to present Castro's own additional testimony. Castro continued to seek to be H.M.'s sole

managing conservator or to adopt alone, and she continued to take the position that she did not want to co-parent with Contreras. The trial court heard testimony from Castro that she had not contacted the person that the trial court had asked to become involved as a co-parenting facilitator in the two months since the trial ended. In addition, the court heard again from H.M.'s CASA guardian ad litem, who testified to CASA's position that it was important for H.M. that the court's chosen co-parenting facilitator become involved in the case and for Castro and Contreras to work together to try to improve communications for H.M.'s benefit. She also testified that it was concerning that Castro was unwilling either to participate with the co-parenting facilitator or attempt to co-parent with Contreras. Near the close of the hearing, the Court asked Contreras to testify as to his opinion of whether Castro should remain in H.M.'s life. He testified that it was important for H.M. to have both parent figures in her life, that it would be detrimental for her to lose either Castro or himself, and that he had faith that they could work it out and co-parent effectively in the child's best interest. After the trial court expressed its frustration that Castro had not done what the court had asked her to do, the trial court stated its intent to name Contreras as sole managing conservator because the Department was not consenting to his adoption of H.M. and to grant his adoption at a later date. At that point, the Department informed the trial court that it would consent to Contreras's adoption, so the trial court determined that it would leave the Department in place as managing conservator until some necessary paperwork and additional background checks could be done, and it ordered that Contreras and H.M. should go to therapy to help H.M. transition to having one parent instead of two and to help with the loss of Castro. The court also ordered Contreras to work with the Department's current caseworker to set up a goodbye visit with Castro within the next two weeks to help H.M. transition to being placed with Contreras in as healthy a way as possible.

**The trial court issues temporary orders and conducts post-trial proceedings to determine whether Castro and Contreras can co-parent.**

On January 26, 2021, Castro filed a "Motion to Modify or, in the Alternative, Motion to Reconsider," informing the trial court that Castro had changed her position and now sought to continue parenting H.M. with Contreras with the help of the co-parenting facilitator identified by the court. She sought a stay of the trial court's January 20, 2021 orders changing the child's placement to Contreras until the trial court could hold a hearing on her request for reconsideration. She informed the court that as of January 25, the Department had sent the child on a "visit" with Contreras but H.M. had not yet been informed about the change in placement or her relationship with Castro. On January 29, 2021, the trial court signed temporary orders requiring Castro and Contreras to attend cooperative parenting with the co-parenting facilitator, appointing the co-parenting facilitator (Sherita Lynch) as H.M.'s guardian ad litem, and ordering that Contreras would begin expanded standard possession on February 1, 2021, as well as making certain specific orders and injunctions regarding the parties' communications with each other and with H.M. The trial court set the next hearing in the cause numbers for February 26, 2021. In the interim, on February 3, Contreras filed a motion to modify or reconsider the temporary orders, requesting that the trial court make him the primary placement for H.M., pursuant to the court's oral ruling on January 20 that he should be named sole managing conservator of H.M., and that it should grant standard or expanded standard possession to Castro as Lynch recommended. Contreras asserted that Castro had misrepresented to the trial court that he and the Department intended H.M.'s placement change to him to be "just another 'visit.'" Contreras attached to his motion an email from Lynch to all parties in which she recommended that H.M.'s placement be with Contreras until she could meet with H.M., CASA, and the Department and that "[i]t would

be [her] strong preference that Ms. Castro has Standard Possession or Expanded Standard Possession for now."

On February 9, the trial court issued further temporary orders, ordering that H.M. be placed in Contreras's home for adoption as soon as possible and that if the Department agreed it was in the child's best interest, that Castro would begin standard possession of H.M. on February 19. After those orders were issued, on February 23, H.M.'s attorney ad litem filed a motion for the judge to confer with the child and for further orders. The attorney ad litem asked for the court to interview the child to determine her wishes about who should have the exclusive right to determine the child's primary residence. The attorney ad litem also requested that H.M. be returned to Castro and that Castro be named the primary conservator during the pendency of the case and that Contreras be granted standard visitation, or in the alternative, that Castro be granted expanded standard visitation.

At the February 26, 2021 hearing, the trial court heard from the guardian ad litem Lynch about her work with Contreras and Castro and about particular services with which she wanted the Department to provide them. The trial court also heard from the current Department caseworker about what the Department could provide in terms of services and about recent visits she had with H.M. Based on her conversations with both Castro and H.M., the Department caseworker expressed concern that Castro was questioning H.M. about what went on at Contreras's house and that H.M. was telling Castro what she wanted to hear and what would validate Castro's feelings; the caseworker was concerned that H.M. was feeling as though it was not okay to be happy at Contreras's house, to have fun there, or to be comfortable there. Accordingly, the caseworker stated,

7

I would recommend the adoption at this point with Mr. Contreras because I am fearful that this is going to continue on and on, and at some point there may be damage that we can not undo. And if this co-parenting fails, [H.M.] may be so damaged in her relationship with Mr. Contreras that there may not be any coming back from that, and that is what concerns me the most.

THE COURT: Okay. That is a very significant concern.

The trial court also heard from H.M.'s attorney ad litem who reiterated the request that the trial court interview H.M. because H.M. had only ever expressed to her that she preferred being primarily placed with Castro.

After hearing from both Castro's and Contreras's attorneys about their clients' perspectives, the trial court stated, "What I see as Miss Castro's inability to follow directions, to put [H.M.] first, I really, really see that, I saw it at the trial and I've seen it since. That concerns me." The court asked Lynch as guardian ad litem to weigh in on the caseworker's concern that Castro's behavior could cause serious damage to H.M.'s relationship to Contreras. Lynch recommended that Castro continue to have standard possession, not expanded standard, because of difficulties with H.M.'s transitions between the households and also that H.M. stay in therapy and that Contreras get some additional parenting coaching to help him adjust to being the one to help H.M. with schoolwork and that Castro get additional help to adjust to relinquishing day-to-day duties as primary parent to Contreras. The trial court decided that it would give an opportunity to Castro and Contreras to demonstrate that they could parallel parent or co-parent, requiring them to "make 110 percent effort to put H.M. first" and only have communications with H.M. that were supportive of the other parent. The court expressed concern directed specifically to Castro that even after it decided to give her another chance to show that "she would do anything she could to keep [H.M.] in her life," "what [the court is ] hearing today is that that isn't what's happening,

8

Miss Castro. That you're not doing what it takes to keep [H.M.] in your life." However, at the conclusion of the hearing, the trial court determined that H.M. would continue her primary placement with Contreras, with Castro to have standard possession, and that Lynch and Contreras and Castro would work on getting the needed services as quickly as possible and they would have another hearing in a month to see what progress had been made. The trial court memorialized these oral orders in written "Further Temporary Orders" signed on April 1, 2021.

The reporter's record reflects that the trial court conducted post-trial proceedings on June 4, 2021. At that hearing, the Department caseworker reported that H.M. was "doing extraordinarily well" in her placement in Contreras's home and that Contreras and Castro had been making improvements in their communication. She also reported that Contreras was involved in therapy and parent coaching, and H.M. was in therapy and doing very well in it. Lynch agreed that Contreras and Castro were now using Our Family Wizard to have effective communications and were not having disagreements about drop-offs and pickups. She stated that she believed that "on some level, Mr. Contreras and Miss Castro can work together in [H.M.'s] best interest." The attorney ad litem informed the trial court of the child's wishes, including for 50/50 possession, and reported that "she seemed happy and upbeat." Castro's counsel informed the trial court that Castro's position was that she would like to be the primary caregiver but was willing to share H.M. with Contreras and for them to have joint decision-making authority. Contreras's counsel informed the court that he recognizes the bond between H.M. and Castro and would be supportive of Castro adopting after he adopts; he also requested that the current placement situation continue. The trial court indicated that she was open to the idea of approving either standard possession or expanded standard possession and that she would order Contreras to pay child support to Castro

9

because he would be receiving the adoption subsidy from the Department (as the person to whom the Department had consented to adopting H.M.) and because his income was higher than Castro's.

The trial court heard from both Contreras and Castro that they would each consent immediately to the other's adoption of H.M. if they were the first to adopt, that they agreed things had been going better, and that they thought they could make joint decisions about H.M. At the conclusion of the hearing, the trial court announced that an in-person hearing would be held on July 9 to grant both adoptions (Contreras's petition with approval of the Department and Castro's petition with Contreras's approval) and enter a SAPCR order, and the court directed Lynch, the Department, and Contreras's and Castro's attorneys to file all necessary paperwork in advance.

**The trial court grants Contreras's petition to adopt.**

No reporter's record was filed for the July 9, 2021 proceeding. On July 26, 2021, the trial court sent the parties a letter summarizing the proceedings up to that point and informing the parties that the court had signed Contreras's adoption order. The court's letter noted, "In November of 2020 this case proceeded to trial." The court stated that "[d]uring trial" the court personally asked both Contreras and Castro if they were willing to adopt H.M. if the other party also adopted; Contreras said yes and Castro said no. Castro had obtained new counsel at that point who sent a written communication to the trial court stating Castro did not want to co-parent with Contreras because she believed it would not be in H.M.'s best interest to do so. The court stated,

> *Despite having already conducted a full trial during which Ms. Castro was represented by counsel who presented her entire case,* I allowed further evidence to be presented by Ms. Castro with her new counsel, Mr. Booth, on January 20, 2021. I then made my decision based on all the evidence, and in the best interest of the child, that Mr. Contreras would adopt and Ms. Castro would not.

10

(Emphasis added.) The court explained that after receiving Castro's motion to modify or reconsider, it issued further temporary orders to Contreras and Castro to work with Lynch to see if co-parenting would be possible. The court noted that at several additional hearings to determine the would-be parents' progress, Castro had continued to tell the court, "both directly and through her counsel, that she wanted to adopt, would be willing to co-parent, and would 'do anything' to keep the child in her life."

The court explained that both Castro's and Contreras's attorneys had been instructed to ensure all the paperwork was ready in advance of the hearing set for July 9, 2021, to grant Contreras's petition to adopt with the approval of the Department and to grant Castro's petition to adopt with Contreras's approval and to enter a SAPCR to determine all Contreras's and Castro's rights and duties regarding H.M. The court stated, "The week of July 9, 2021 my office had to contact both [Castro's attorney] Mr. Booth and [Contreras's attorney] Ms. Crouch Bartlett because neither had filed any of the required paperwork nor forwarded that paperwork or any proposed orders to me." The trial court indicated that on the morning of July 9, both Contreras and Castro appeared in person and brought family and friends. The court stated,

> Due to the presence of so many people who were hoping for a wonderful day, and to the fact that Ms. Crouch Bartlett had filed her necessary paperwork late on the day of July 8, I agreed to do a non-binding adoption "ceremony" with no actual orders being issued or signed. Mr. Booth and [attorney ad litem] Ms. DuBose both failed to appear. Since it was not an actual hearing I allowed them to participate over the phone. Mr. Booth failed to file any paperwork of any kind, and admitted he had not read the Travis County Local Rules, despite never having handled an adoption in Travis County.

> At the conclusion of the gathering in my courtroom on July 9, I made it clear that all paperwork and proposed orders were to be submitted to me by 5:00 pm on July 16, 2021. I was informed that Mr. Contreras and Ms. Castro were in agreement on all terms for the proposed SAPCR order except that Ms. Castro wanted a 50/50

11

possession and access order, and Mr. Contreras wanted a Standard or Expanded Standard Possession Order. I indicated that I would make a decision and directed Ms. Crouch Bartlett to draft a proposed SAPCR Order, indicating where there was not agreement. She prepared a proposed SAPCR that included language for an Expanded Standard Possession Order.

The trial court stated that Contreras's attorney had complied with the court's directions regarding the adoption paperwork and that Contreras's adoption order was signed and final and attached to the letter as well as filed with the trial-court clerk.

Castro's attorney, on the other hand, had filed a July 16, 2021 letter, styled as a "Request for Clarification Before Proceeding with Adoption." The letter noted that although the trial court had requested that an adoption order be provided by 5:00 p.m. that day, Castro was requesting clarification of the trial court's intentions concerning custody before submitting an agreed order of adoption. Specifically, she requested guidance regarding whether the court would be granting 50/50 possession.

In the trial court's July 26 letter, it stated that Castro's attorney's letter had raised the following "grave concerns" in her mind:

1.  whether it is in the best interest of the child for Ms. Castro to adopt at all;

2.  whether Ms. Castro truly wants to adopt the child; and

3.  whether Ms. Castro had the child's best interests or her own best interests first in her mind.

Accordingly, the trial court stated, "At this time, Mr. Contreras is the legal and permanent father of the child."

The court noted that "[t]his case, in any form, is assigned to the 459th District Court for as long as I remain on the bench," meaning any new case filed would still be assigned to the

12

court and that all legal issues regarding H.M. must be sent to the trial court's attention. The cause number in which Contreras had filed the petition to modify was to be sealed and closed, and the cause number in which he filed his petition to adopt was likewise to be sealed and closed. The court left Castro's cause number pending but stated "no orders will be forthcoming without proper motions filed and served on all parties."

**Castro requests that the trial court enter an order granting her petition to adopt and a SAPCR.**

In August 2021, Castro filed a "Motion to Enter Order Granting Adoption of a Child and for Final Order in a Suit Affecting the Parent-Child Relationship," seeking to have the trial court enter an order granting adoption and submitting a proposed SAPCR order.[1] Contreras responded, stating that he did not consent to Castro's adopting the child "based on the same serious concerns noted in the Court's letter to the parties issued on July 26, 2021, as well as additional concerns which have occurred prior to and since July 9, 2021," and requesting that the court deny Castro's petition to adopt. Castro subsequently filed a "Request for Hearing on Motion to Enter Order Granting Adoption of a Child and for Final Order in a SAPCR," but there is no indication in the clerk's record that she ever set either the Motion to Enter Order or Request for Hearing on Motion to Enter Order for a hearing. On August 27, 2021, the trial court signed the "Order Denying an Adoption of a Child." At Castro's request, the trial court later signed findings of fact and conclusions of law. This appeal followed.

---

[1] Although the motion indicated that the proposed SAPCR order was attached to the motion, the proposed SAPCR order is not included in the clerk's record.

13

**Castro initially failed to file a reporter's record on appeal.**

On appeal, after both parties filed their opening briefs, this Court granted in part Contreras's "Motion to Abate and Require Appellant to Obtain Reporter's Record and Motion to Affirm Without Reporter's Record." Castro had indicated on the docketing statement filed with the Court that there was no reporter's record and that no reporter's record was requested and no payment arrangements were made with the reporter. In addition to his motion, Contreras had submitted a letter to the Court representing that his counsel confirmed with the official court reporter that a record was made on the following dates: November 9, 2020, November 10, 2020, November 12, 2020, November 16, 2020, January 20, 2021, February 27, 2021, and June 4, 2021. Because it also appeared from the clerk's record that the trial court had conducted a final bench trial in November 2020 and orally rendered judgment on January 20, 2021, followed by several subsequent hearings before the trial court signed its order denying Castro's petition to adopt, we gave Castro notice and an opportunity to cure the lack of a reporter's record, as required under Texas Rule of Appellate Procedure 37.3. Castro subsequently cured her failure to file the nine-volume reporter's record, and she also filed a reply brief. In light of the late-filed reporter's record, the Court granted leave for Contreras to file a reply brief.

## STANDARD OF REVIEW

Chapter 162 of the Texas Family Code governs adoptions. Section 162.016(b) provides that "[i]f the court finds that the requirements for adoption have been met and the adoption is in the best interest of the child, the court shall grant the adoption." Tex. Fam. Code § 162.016(b). The decision to grant or deny an adoption is within the discretion of the trial court, and we may not set aside the decision except for abuse of discretion. *In re J.G.*, 412 S.W.3d 83, 87 (Tex.

14

App.—Fort Worth 2013, no pet.) (citing *In re W.E.R.*, 669 S.W.2d 716, 716 (Tex.1984) (per curiam)). A court of appeals may not substitute its judgment for that of the trial court. *In re W.E.R.*, 669 S.W.2d at 716-17.

In a family-law case, "the traditional sufficiency standards of review overlap the abuse of discretion standard, and appellate courts apply a hybrid analysis" in which challenges to the legal and factual sufficiency of the evidence are not independent grounds of error but are relevant factors when determining whether the trial court abused its discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587-88 (Tex. App.—Austin 2006, pet. denied). No abuse of discretion occurs as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Stamper v. Knox*, 254 S.W.3d 537, 542 (Tex. App.—Houston [1st Dist.] 2008, no pet.). To apply this standard, we conduct a two-pronged inquiry to determine whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its application of that discretion. *Zeifman*, 212 S.W.3d at 588. We conduct the applicable sufficiency review when considering the first prong of the test. *Id.* We then determine whether the trial court made a reasonable decision based on the evidence. *Id.* "A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or, stated differently, when it acts without any reference to guiding rules or principles." *In re Thetford*, 574 S.W.3d 362, 374 (Tex. 2019) (orig. proceeding) (quoting *In re Meador*, 968 S.W.2d 346, 353 (Tex. 1998) (orig. proceeding)).

## ANALYSIS

Castro presents two issues on appeal. She asserts that the trial court abused its discretion (1) by failing to (a) hold a final hearing on her petition to adopt and (b) a hearing on whether Contreras revoked his consent to the adoption without good cause and (2) because no final

15

hearing was held, by relying on legally and factually insufficient evidence to support a key finding of fact and a key conclusion of law. We turn first to Castro's contention that the trial court failed to conduct a final hearing on the adoption petition.

**I.     Castro asserts that the trial court abused its discretion by failing to hold a final hearing and a hearing on Contreras's revocation of consent to her adoption of H.M.**

**A. The trial court conducted a full trial on the merits before denying Castro's petition to adopt.**

In her reply brief (which contains only a few references to a single post-trial proceeding in one volume of the nine-volume reporter's record), Castro acknowledges "that the initial hearing held November 9, 10, 12, and 16, 2020, and January 20, 2021 was likely initially intended to be a final trial." She states that "instead of making a final ruling, the trial court entered three separate temporary orders over the next six months." She argues that the trial court abused its discretion because it did not hold a "final adoption hearing" on July 9, 2021, but instead held a nonbinding adoption ceremony and later signed an order granting Contreras's petition to adopt and a subsequent order denying her petition to adopt, without allowing Castro to return to court for any further hearing.

Castro fails to provide any legal authority to support what we construe as her argument that the trial court was required to hold a second trial at the "final adoption hearing." We note that she did not object when the trial court advised the parties that it would hold a non-evidentiary hearing on July 9, 2021, for the parties to appear in person to sign the adoption paperwork. *See* Tex. R. App. P. 33.1. We also note that the only reason that the trial court was unable to sign orders on July 9 granting both Contreras's petition to adopt and Castro's petition to adopt was because Castro had failed to file the necessary paperwork with the court. Instead, the

16

trial court gave Castro another opportunity to submit the paperwork by 5:00 p.m. on July 16, 2021. Castro once again failed to comply with the trial court's instruction and instead sent a letter requesting clarification on what the terms of the possession order would be.

We cannot conclude that the trial court abused its discretion by subsequently denying Castro's petition to adopt without an additional hearing when it had previously conducted a five-day trial with multiple witnesses and had provided Castro with multiple post-trial opportunities to demonstrate whether she was willing to co-parent with Contreras on whatever terms the trial court determined to be in the child's best interest. *See In re I.E.F.*, 345 S.W.3d 637, 640 (Tex. App.—San Antonio 2011, no pet.) (explaining ordinary meaning of term "actual trial" "is the hearing in open court leading up to the rendition of judgment, on the questions of law, if the case is disposed of on the questions of law, or on the questions of fact, if the final judgment is rendered on the facts" (citing *Stubbs v. Stubbs*, 685 S.W.2d 643, 644-45 (Tex. 1985) (examining requirement that party participate in "actual trial" to proceed by writ-of-error review), *abrogated on other grounds by Ex parte E.H.*, 602 S.W.3d 486, 496 (Tex. 2020))). A trial court retains plenary power over a case for a minimum of thirty days after it signs a final judgment and may reconsider its rulings at any time before its plenary power expires. *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 294-95 (Tex. App.—Dallas 2009, no pet.). By issuing interlocutory orders and modifying its initial oral rendition of judgment (which we note it did based on Castro's motion to modify or reconsider), the trial court acted within its broad plenary power "to dispose of any matter properly before it." *See West Travis Cnty. Pub. Util. Agency v. CCNG Dev. Co.*, 514 S.W.3d 770, 775 n.3 (Tex. App.—Austin 2017, no pet.). "The trial court's power to modify its judgment during this time period is 'practically unlimited' or 'virtually absolute.'" *Id.* (quoting *Esty*, 298 S.W.3d at 294-95). The trial court's willingness to give Castro additional opportunities to demonstrate

that she would be able to appropriately co-parent with Contreras does not translate into any obligation to provide her with a second full trial on the merits. The trial court did not abuse its discretion by denying Castro's petition to adopt after conducting a full trial on the merits.

### B. The trial court did not abuse its discretion by not holding a hearing on Contreras's revocation of his consent to Castro's adoption of H.M.

Castro also argues in her first issue that the trial court abused its discretion by failing to hold what she contends is a mandatory hearing under Texas Family Code Section 162.010 to determine whether Contreras revoked his consent to her adoption of H.M. without good cause. Section 162.010(a) states:

> Unless the managing conservator is the petitioner, the written consent of a managing conservator to the adoption must be filed. The court may waive the requirement of consent by the managing conservator if the court finds that the consent is being refused or has been revoked without good cause. A hearing on the issue of consent shall be conducted by the court without a jury.

Tex. Fam. Code § 162.010(a). Contreras argues that the plain language of this section does not necessarily require a hearing on the issue of consent; it merely requires that any hearing on the issue must be conducted outside of the presence of the jury.

We need not resolve this statutory-construction issue, however, because Castro failed to preserve this issue for appellate review. *See* Tex. R. App. P 47.1. Preservation requires one of three rulings by the trial court: an express ruling; an implicit ruling; or a refusal to rule, coupled with an objection to that refusal by the complaining party. *Id.* R. 33.1(a)(2). The record does not reflect either an objection by Castro to the trial court's refusal to rule, if any, or an express ruling on her motion requesting an evidentiary hearing on Contreras's refusal to consent to the adoption. As for the possibility that the trial court implicitly ruled on the motion, "[a]n essential

18

element of an implicit ruling is awareness by the trial judge of the request or motion that is supposedly being ruled on." *AIS Servs., LLC v. Mendez*, No. 05-07-01224-CV, 2009 WL 2622391, at \*2 (Tex. App.—Dallas Aug. 27, 2009, no pet.) (mem. op.). "[O]rdinarily the filing of a motion, without more, does not give rise to an inference that the trial court is actually aware of it." *Id.*; *see also Alikhan v. Alikhan*, No. 03-19-00515-CV, 2021 WL 3085844, at \*4 (Tex. App.—Austin July 22, 2021, pet. denied) (mem. op.) (collecting cases supporting proposition that trial court is not required to rule on motion that has not been called to its attention). Here, the record does not show that the trial court was aware of Castro's motion requesting an evidentiary hearing on the issue of consent or that Castro set the motion for a hearing or took any other action to call the motion to the trial court's attention. *See Alikhan*, 2021 WL 3085844, at \*4. In the findings of fact and conclusions of law, the trial court identified Castro's August 9, 2021 motion to enter order of adoption and Contreras's August 9, 2021 response in which he revoked consent, but it does not identify Castro's motion for an evidentiary hearing on the issue of consent. Therefore, we cannot infer an implicit ruling on the motion.[2]

---

[2] Castro asserts in her reply brief that she preserved error on this issue under Texas Rule of Appellate Procedure 33.1(b) by raising it in her motion for new trial, which was overruled by operation of law. Tex. R. App. P. 33.1(b) ("In a civil case, the overruling by operation of law of a motion for new trial or a motion to modify the judgment preserves for appellate review a complaint properly made in the motion, unless taking evidence was necessary to properly present the complaint in the trial court."). However, Castro does not address Rule 33.1(b)'s exception for complaints requiring that evidence be taken. Here, Castro's complaint is that the trial court should have taken evidence on the issue of Contreras's revocation of consent to her adoption of H.M. Accordingly, she was required to call the motion to the court's attention by requesting a hearing rather than allowing the motion for new trial to be overruled by operation of law. *See Truong v. Rose*, No. 03-99-00740-CV, 2000 WL 1125245, at \*1 (Tex. App.—Austin Aug. 10, 2000, no pet.) (not designated for publication) (overruling by operation of law of a motion for new trial does not preserve for appellate review complaint requiring that evidence be taken); *see also Elite Towing, Inc. v. LSI Fin. Group*, 985 S.W.2d 635, 644 (Tex. App.—Austin 1999, no pet.) (explaining that Rule 33.1(b) was promulgated to allow preservation of error by motion for new trial complaints that could not be raised before trial court issued judgment).

Moreover, even if Castro had preserved error on this issue, to reverse a judgment based on trial-court error, we must conclude that the error probably caused rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the appellate court. Tex. R. App. P. 44.1(a). Having reviewed the entire record, we conclude that even if the trial court had erred by failing to hold an evidentiary hearing on Contreras's revocation or refusal to consent to the adoption, the lack of a hearing did not probably cause the rendition of an improper judgment.[3] *In re Commitment of Jones*, 602 S.W.3d 908, 914 (Tex. 2020) (applying harmful-error rule when trial court erred by denying appellant's requested jury instruction). While the trial court could not have granted Castro's petition for adoption without Contreras's consent, the trial court's findings of fact and conclusions of law make clear that Contreras's lack of consent was not the sole reason the trial court denied Castro's petition. As we will discuss below, the trial court also found under Family Code Section 162.016 that the requirements for adoption by Castro had not been met and that adoption by Castro was not in the child's best interest. We overrule Castro's first issue.

---

[3] The trial court's alleged error in this case is not the type of error that prevents us from determining whether the error probably caused the rendition of an improper judgment. *In re Commitment of Jones*, 602 S.W.3d 908, 914 (Tex. 2020) ("The prevented-from-presenting prong, on the other hand, generally applies when something prevents an appellate court from evaluating harm under the improper-judgment prong," such as the submission of both valid and invalid theories of liability in single broad-form jury question.). In this case, the prevented-from-presenting prong does not apply because the record contains evidence enabling us to determine that the lack of a hearing on Contreras's revocation of or refusal to consent did not probably cause the rendition of an improper judgment. *See id.*

**II.     Castro asserts that the trial court abused its discretion by denying her petition to adopt because it relied on legally and factually insufficient evidence.**

In her second issue, Castro challenges the trial court's finding of fact number 19 and its conclusion of law number 1 as being based on legally and factually insufficient evidence. Finding of fact number 19 states: "The Court finds that based on all the evidence presented that it is not in the best interest of the Child to be adopted by Petitioner." Conclusion of law number 1 states: "Under Texas Family Code Section 162.016, the Court finds that the requirements for adoption by Petitioner Gabriela Castro have not been [sic] and that adoption of the Child by Petitioner Gabriela Castro is not in the best interest of the Child." Castro contends that this finding and conclusion are not supported by legally and factually sufficient evidence because they were based "on evidence from temporary order hearings and documents submitted by the parties' attorneys." Castro further contends that she "was not given the opportunity to show the Court that she had met the requirements for adoption nor was she able to prove to the Court that the adoption was in the best interest of the child because she was denied a final hearing" and that the trial court's "decision to deny the adoption without allowing Castro the opportunity to submit evidence was unreasonable." In her reply brief, Castro states that "[a]fter review of the Reporter's Record, Miss Castro's position concerning the failure to hold a final hearing has not changed."

We previously concluded that the trial court conducted a full trial on the merits. In addition, the trial court gave Castro several post-trial opportunities to establish that it would be in the child's best interest to allow Castro to adopt the child. After all those opportunities, Castro failed to timely comply with the trial court's instruction to submit the necessary documents and a proposed adoption order. Instead, she requested that the trial court first inform her of what the

21

terms of her possession of H.M. would be, an action that the trial court noted raised "grave concerns" about whether H.M.'s adoption by Castro would be in H.M.'s best interest.

To the extent that Castro argues more generally that the trial court abused its discretion by denying her petition to adopt because (1) it lacked sufficient evidence upon which to exercise its discretion and (2) erred in its exercise of that discretion, we disagree. *See Zeifman*, 212 S.W.3d at 588. To answer the first question, we conduct a traditional sufficiency review. In this case, because Castro attacks the legal sufficiency of the evidence supporting the court's adverse finding of fact on an issue on which she had the burden of proof, we must sustain the judgment unless the record conclusively establishes all facts in support of the issue. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). Similarly, Castro's attack on the factual sufficiency of the evidence supporting the adverse finding of fact fails unless the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). Because the factfinder is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, we may not substitute our judgment for that of the trial court. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005) (explaining that factfinder may choose to disbelieve witness); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (same).

Conclusions of law are reviewable when attacked as a matter of law, but not on grounds of factual sufficiency. *VIV Elec. Co. v. STR Constructors, Inc.*, No. 14-98-00551-CV, 2000 WL 854857, at *2 (Tex. App.—Houston [14th Dist.] June 29, 2000, no pet.) (not designated for publication). The standard of review is whether the legal conclusions drawn from the facts are correct. *Dickerson v. DeBarbieris*, 964 S.W.2d 680, 683 (Tex. App.—Houston [14th Dist.] 1998, no pet.). We will uphold conclusions of law if the judgment can be sustained on any legal theory

22

supported by the evidence; incorrect conclusions do not require reversal if the controlling findings of fact will support a correct legal theory. *Id.*

Castro presents no legal authority or analysis to explain how the record conclusively establishes that her adoption of H.M. would be in the child's best interest or how the finding of fact is so against the great weight and preponderance of the evidence as to be unjust. Nor does she cite to the nine-volume reporter's record to support her challenge to the adverse fact finding and conclusion of law. Moreover, there are a number of unchallenged fact findings that preclude Castro from being able to show that the record conclusively establishes that it was in H.M.'s best interest for Castro to adopt. *See Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014) ("We defer to unchallenged findings of fact that are supported by some evidence."). For example, the trial court found that the testimony of H.M.'s therapist during the five-day trial was not credible; it found that "Castro was not direct and honest in her testimony nor in her communications with the Court"; and it found "the Child's outcry of physical abuse by Gabriela Castro to be credible." All of these findings are supported by evidence in the record. Accordingly, we conclude that there was legally and factually sufficient evidence to support the trial court's finding that H.M.'s adoption by Castro was not in H.M.'s best interest and that there was legally sufficient evidence to support the similar conclusion of law.

If we determine that the trial court had sufficient information upon which to exercise its discretion, to answer the second question, we determine whether the trial court made a reasonable decision based on the evidence, "that is, that the court's decision was neither arbitrary nor unreasonable." *Zeifman*, 212 S.W.3d at 588. Given Castro's multiple opportunities to demonstrate her willingness to put the child's best interest before her own, and Castro's repeated

23

failures to comply with the court's instructions, we cannot conclude that the trial court's decision was arbitrary or unreasonable. We overrule Castro's second issue.

## CONCLUSION

Having overruled Castro's two issues, we affirm the trial court's order denying her petition to adopt.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed:   August 31, 2022

24